******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRANDON V. SMITH *v.* TOWN OF REDDING ET AL.
(AC 38704)

Sheldon, Mullins and Sullivan, Js.

*Syllabus*

The plaintiff, who had sustained injuries when he fell off of a municipal retaining wall, sought to recover damages for absolute public nuisance, claiming that the defendant town had created a nuisance by causing the retaining wall to be constructed without a fence on top of it, which, in turn, caused his fall and resulting injuries. Prior to trial, the plaintiff filed a motion in limine, seeking a preliminary ruling as to the admissibility of evidence that, subsequent to his fall, the town had constructed a fence on top of the wall and that the Department of Transportation had ordered the installation of the fence. In response, the trial court issued an order ruling that evidence of any subsequent remedial measures as to the retaining wall was inadmissible. Following a trial, the jury returned a verdict in favor of the town, determining that the plaintiff had failed to prove that the retaining wall was inherently dangerous. Thereafter, the trial court denied the plaintiff's motion to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Held*:

1. The record was inadequate to review the plaintiff's claim that the trial court abused its discretion by excluding evidence regarding the construction of the fence on the retaining wall after the plaintiff's fall; the plaintiff failed to provide this court with various transcripts of the trial proceedings, and without a complete record of the trial, this court did not know whether the plaintiff presented other evidence that the retaining wall without the fence was inherently dangerous, and could not analyze fully whether the trial court's exclusion of evidence of subsequent remedial measures to the retaining wall had affected the jury's verdict or whether the plaintiff had been harmed by the trial court's ruling.

2. This court declined to review the plaintiff's claim that the trial court improperly failed to instruct the jury on the town's zoning regulations as a safety standard; the record indicated that the trial court did not address or decide this claim, and, therefore, the plaintiff failed to preserve it for appeal.

Argued May 30—officially released October 17, 2017

*Procedural History*

Action to recover damages for public nuisance, brought to the Superior Court in the judicial district of Fairfield, where the court, *Radcliffe, J.*, granted the motion to strike filed by the defendant M. Rondano, Inc.; thereafter, the court, *Radcliffe, J.*, granted the motion for summary judgment filed by the defendant BL Companies, Inc.; subsequently, the complaint was withdrawn as to the defendant M. Rondano, Inc.; thereafter, the court, *Kamp, J.*, issued an order regarding the admissibility of certain evidence; subsequently, the court, *Kamp, J.*, denied the plaintiff's motion to reargue; thereafter, the matter was tried to the jury before *Kamp, J.*; verdict for the named defendant; subsequently, the court, *Kamp, J.*, denied the plaintiff's motion to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Affirmed.*

*A. Reynolds Gordon,* with whom was *Frank A. DeNicola, Jr.,* for the appellant (plaintiff).

*Thomas R. Gerarde,* with whom was *Emily E. Holland,* for the appellee (named defendant).

*Opinion*

SULLIVAN, J. In this absolute public nuisance action, the plaintiff, Brandon V. Smith, appeals following a jury trial from the judgment of the trial court rendered in favor of the defendant town of Redding.[1] On appeal, the plaintiff claims that the trial court improperly failed: (1) to admit evidence of involuntary subsequent remedial measures; and (2) to instruct the jury on the Redding Zoning Regulations. We affirm the judgment of the trial court.

On the basis of the record provided, the jury reasonably could have found the following facts. After consuming alcoholic drinks over the course of an evening at a couple of establishments in Redding, the plaintiff departed the Lumberyard Pub around 2 a.m. on September 17, 2011.[2] Departing the pub, the plaintiff walked across the parking lot in front of the pub to the exit onto the street. On the edge of the parking lot was a wooden guardrail and, on the other side of the guardrail, there was a landscaped area atop a retaining wall. The retaining wall began on a plane level with the ground, and the ground then sloped down along the length of the wall. On the night of his fall, the plaintiff stepped onto the wall at ground level and walked the length of the wall before falling off, landing on his head and shoulder.

The retaining wall had been constructed as part of the defendant's federally funded streetscape project in the Georgetown section of the town. The defendant hired BL Companies, Inc., to design the project and J. Rondano, Inc., to construct it. As designed and constructed, the retaining wall was without a fence atop the wall.

On December 27, 2011, the plaintiff commenced this action against the defendant. See footnote 1 of this opinion. He then amended his complaint several times. In his substituted complaint filed on April 15, 2015, the plaintiff alleged that the defendant caused the retaining wall to be built without a fence, that such wall constituted an absolute public nuisance, and that this caused his fall and resulting injuries. Following a jury trial, the jury returned a verdict in favor of the defendant on November 12, 2015, determining in its interrogatories that the plaintiff failed to prove that the retaining wall was inherently dangerous, in that it had a natural tendency to inflict injury on person or property. The plaintiff filed a motion to set aside the verdict, which the court denied on December 22, 2015. Thereafter, the court rendered judgment in favor of the defendant, and this appeal followed. Additional facts will be set forth as necessary to the resolution of this appeal.

I

The plaintiff claims that the trial court abused its discretion when it failed to admit evidence of a fence

that the defendant had built atop the retaining wall subsequent to his fall. Although he acknowledges that our courts have not recognized such an exception to the exclusion of evidence of subsequent remedial measures, he argues that the fence was built involuntarily, and, thus, the bar to evidence of subsequent remedial measures is inapplicable. Without deciding whether such evidence *could be* admitted, we conclude that we are unable to review the plaintiff's claim because the record before this court does not allow us to evaluate whether the trial court's ruling harmed him.

As a preliminary matter, we set forth the standard for public nuisance liability as expressed by our Supreme Court. "Our prior decisions have established that in order to prevail on a claim of nuisance, a plaintiff must prove that: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was [the] proximate cause of the plaintiffs' injuries and damages. . . . [W]here absolute public nuisance is alleged, the plaintiff's burden includes two other elements of proof: (1) that the condition or conduct complained of interfered with a right common to the general public . . . and (2) that the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance." (Citations omitted; internal quotation marks omitted.) *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987).

The following additional procedural facts are relevant to this claim. On September 15, 2015, the plaintiff filed a motion in limine seeking, inter alia, a preliminary ruling as to the admissibility of evidence of a fence constructed atop the retaining wall in April, 2015. Specifically, the plaintiff sought to introduce evidence at trial that the Department of Transportation (department) ordered the installation of the fence. He also sought to introduce into evidence photographs of the fence. The plaintiff argued, inter alia, that the exclusionary rule regarding evidence of subsequent remedial measures; see § 4-7 of the Connecticut Code of Evidence;[3] did not apply because it excludes evidence of *voluntary* remedial measures but, in this case, construction of the fence was required from the start of the project and was involuntarily built. In an October 14, 2015 order, the court determined that evidence of any subsequent remedial measures as to the retaining wall was inadmissible.

In his motion to set aside the verdict, the plaintiff again raised the issue of the admissibility of evidence of the subsequently built fence, citing arguments made in prior briefs and oral arguments before the court, as a ground to set aside the verdict. The court denied the

plaintiff's motion, concluding that any evidence of the fence was inadmissible under § 4-7 of the Connecticut Code of Evidence.

"[Our appellate courts] review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . Under the abuse of discretion standard, [w]e [must] make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Filippelli* v. *Saint Mary's Hospital*, 319 Conn. 113, 119, 124 A.3d 501 (2015). Nevertheless, "[b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . [A]n evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." (Internal quotation marks omitted.) *Filippelli* v. *Saint Mary's Hospital*, supra, 119.

We conclude that even if we assumed, arguendo, an exception for involuntary measures to the rule against the admission of evidence of subsequent remedial measures, the record before this court would not allow us to analyze whether the plaintiff was harmed by the exclusion of such evidence in this case. When an appellant requests that the court reverse the judgment of the trial court on the basis of an allegedly improper evidentiary ruling, a complete record is particularly important for a reviewing court to consider the extent of the harm suffered, if any. See *Desrosiers* v. *Henne*, 283 Conn. 361, 367–69, 926 A.2d 1024 (2007) (declining to review evidentiary claim where defendant provided only excerpts of trial transcripts because it was impossible for reviewing court to determine whether alleged impropriety was harmful); *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 531, 832 A.2d 1180 (2003) (declining to review evidentiary claim where plaintiff did not provide transcript of witness testimony, stating, "even if we assume, arguendo, that the challenged evidentiary ruling was improper, we have no way of discerning whether any such impropriety was harmful in the broader context of the entire trial"); *Chester* v. *Manis*, 150 Conn. App. 57, 62–63, 89 A.3d 1034 (2014) (declining to review evidentiary claim because incomplete record left court unable to determine if "alleged impropriety would likely have affected the result of the trial"); *Quaranta* v. *King*, 133 Conn. App. 565, 569–70, 36 A.3d 264 (2012) (declining to review plaintiff's evidentiary claim where plaintiff provided

only partial transcript of proceedings).

A review of our appellate record in the present case reveals that the plaintiff ordered and delivered a paper copy and an electronic copy of the following six transcripts: (1) the October 14, 2015 argument on the plaintiff's motions in limine; (2) the October 27, 2015 argument on the motion to reargue regarding subsequent remedial measures; (3) the October 30, 2015 direct examination and cross-examination of lay witness Aimee Pardee; (4) the November 3, 2015 direct examination and cross-examination of lay witness Priti Bhardwaj; (5) the November 12, 2015 argument on exceptions to the jury charge; and (6) the December 14, 2015 argument on the motion to set aside the verdict. Additionally, the plaintiff's appendix includes a single page transcript described as an excerpt of the October 30, 2015 testimony of Natalie Ketcham.

We know for certain that we were not provided with the full testimony of Ketcham, the plaintiff's expert, Richard A. Ziegler, and the plaintiff, or with counsels' closing arguments. Additionally, we know that we were not provided with any testimony from Timothy Wilson or Matthew Cleary, engineers from the department. A lengthy period passed between jury selection and the jury's verdict, suggesting a trial that covered a couple of weeks. Additionally, we are left to speculate about who else testified and the scope and content of their testimony regarding the dangerousness or safety of the retaining wall without a fence. For example, the defendant disclosed an expert, but we do not know whether he testified or the content of his testimony relevant to this issue.

It is the appellant's burden to provide a complete record on appeal. Practice Book § 61-10. He also is responsible for establishing that the allegedly improper evidentiary ruling of the trial court harmed him. See *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 128, 956 A.2d 1145 (2008) ("Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful." [Internal quotation marks omitted.]). We conclude that the plaintiff has not carried his burden under the circumstances of this case.

On the record before this court, we are unable to determine whether the trial court's evidentiary ruling affected the jury's verdict. Even if we assume, arguendo, that the court improperly excluded the evidence regarding the department's order to construct a fence atop the restraining wall, we are unable to assess fully the impact of this ruling. The jury's verdict was based upon its conclusion that the plaintiff failed to prove that the wall without a fence was inherently dangerous in that it had a natural tendency to inflict injury on person or

property. Although the department's order may have carried some added weight with the jury, the plaintiff was able to argue that the department's bridge design manual called for a fence and that the department called for a fence during the design of the wall. The bridge design manual, the state building code, and The BOCA National Building Code (14th Ed. 1999) were admitted into evidence. Without the testimony of other witnesses, including the plaintiff's expert and at least two state engineers, and counsel's closing arguments, we are unaware of the extent to which the plaintiff was able to present other evidence that the wall without a fence was inherently dangerous. Accordingly, we are unable to analyze whether the other evidence in the case would have given us the fair assurance that the exclusion of the evidence of subsequent remedial measures did not affect the jury's verdict in order to determine whether the plaintiff was harmed by the trial court's ruling.

## II

The plaintiff also claims that the trial court improperly failed to instruct the jury on the Redding Zoning Regulations (zoning regulations).[4] He asserts that the zoning regulations were relevant evidence that the retaining wall was inherently dangerous without a fence. First, he argues that the zoning regulations, which included safety as one of its purposes, applied to the construction of the wall. Second, he asserts that, even if the zoning regulations did not apply to the wall, they established a safety standard, which the court should have instructed the jury to consider when determining whether the wall was inherently dangerous.[5] We conclude that the plaintiff has failed to preserve his claim for appeal.

The record does not reveal a request to charge regarding inherent danger and the zoning regulations, or the safety standards allegedly evinced by those regulations. Although the plaintiff filed a written request to charge and a supplemental request to charge, those requests did not address the issue of inherent danger as it relates to the zoning regulations, and we have not been provided with a record of the charge conference.

Additionally, the plaintiff, in his exception to the charge, also did not raise these specific issues. After the court delivered its instructions, it asked the parties whether they wanted to take exceptions to the charge. The plaintiff took exception, stating in relevant part: "Yes, Your Honor. First, Your Honor's failure to charge on the Redding zoning violation, making it a violation to have within the town of Redding a retaining wall more than four feet tall with no fence." This exception, as stated, was insufficient to put the court on notice of the nature of the claimed instructional error, as the plaintiff did not state any grounds for the exception. See generally *Herrera* v. *Madrak*, 58 Conn. App. 320, 323, 752 A.2d 1161 (2000).

Our review of the record provided reveals that the first time the plaintiff raised his claim that the court should have instructed the jury on the zoning regulations as evidence that the wall, as constructed, constituted an inherently dangerous condition was in his motion to set aside the verdict. The plaintiff set forth essentially the same argument in his memorandum of law in support of his motion to set aside as he does before this court on appeal. Specifically, as to the wall's inherent dangerousness, he first argued to the trial court that the zoning regulations applied under General Statutes § 13a-80d[6] because the wall and the surrounding project were in a state right-of-way and the defendant was a tenant or lessee of the state. He cited evidence from the trial to support this claim. Alternatively, he argued that the zoning regulations were admissible as a safety standard to address the inherent danger, even if the regulations did not apply to the wall. On December 14, 2015, the court heard oral arguments on the motion.

In its memorandum of decision, however, the court framed the plaintiff's argument as follows: "The second ground upon which the plaintiff seeks to set aside the verdict is . . . the court's failure to instruct the jury that the retaining wall was unlawful in that it violated the . . . zoning regulations." After setting forth the evidence presented at trial, the court concluded that the evidence did not support a charge to the jury concerning the application of the zoning regulations.

Practice Book § 16-20 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. . . ." "It is fundamental [however] that claims of error must be distinctly raised and decided in the trial court before they are reviewed on appeal. As a result, Connecticut appellate courts will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Tompkins* v. *Freedom of Information Commission*, 136 Conn. App. 496, 511, 46 A.3d 291 (2012); see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims "neither addressed nor decided" by trial court not properly before appellate tribunal).

In the present case, we have no record that indicates that the court ever addressed the claim that the plaintiff is making on appeal, namely, that the court should have instructed the jury on the zoning regulations as a safety standard. The court's decision on the motion to set aside the verdict addressed the applicability of the zoning regulations to the third element of nuisance, unreasonable or unlawful use, rather than the first element, inher-

ent danger. Because the trial court did not address or decide the plaintiff's claim regarding the zoning regulations as a safety standard, we decline to address it.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff served his complaint against the defendants, the town of Redding, M. Rondano, Inc. (Rondano), and BL Companies, Inc. (BL Companies). On December 5, 2014, the court rendered summary judgment in favor of BL Companies on the plaintiff's claims against it. Additionally, on July 21, 2015, the plaintiff withdrew his claim against Rondano. Although the town brought a cross claim against Rondano, the court bifurcated that claim to be resolved after the trial between the plaintiff and the town. This appeal is from the trial on the plaintiff's claim of absolute public nuisance against the town. Consequently, Rondano and BL Companies are not parties to this appeal and, therefore, all references to the defendant herein are to the town of Redding.

[2] The parties agree that the plaintiff's fall occurred on September 17, 2011.

[3] Section 4-7 (a) of the Connecticut Code of Evidence provides in relevant part: "[E]vidence of measures taken after an event, which if taken before the event would have made injury or damage less likely to result, is inadmissible to prove negligence or culpable conduct in connection with the event. Evidence of those measures is admissible when offered to prove controverted issues such as ownership, control or feasibility of precautionary measures."

[4] The plaintiff also appears to claim that the court abused its discretion in excluding the zoning regulations from evidence. The record includes, however, the zoning regulations in their entirety as exhibit 20 and excerpts thereof were admitted as exhibit 20a; both exhibits were marked as full exhibits. Corroborating the admission of these exhibits, the limited recorded provided; see part I of this opinion; includes a trial transcript of the plaintiff's attorney requesting exhibits 20 and 20a, reading from the zoning regulations, and questioning the defendant's zoning enforcement officer on the regulations. Our examination of the limited record and the parties' appellate arguments, does not provide any indication that the court limited the admissibility of the regulations or limited the plaintiff's ability to argue their relevance.

[5] The jury's verdict was based on its conclusion that the plaintiff had failed to demonstrate that the wall was inherently dangerous. We interpret the plaintiff's arguments that the construction of the wall without a fence violated the zoning regulations to go to evidence of inherent dangerousness. As far as the plaintiff argues that the purported violation had some independent import, this is irrelevant because the jury did not reach the third element of a cause of action for nuisance, which requires that "the use of the land was unreasonable or unlawful . . . ." (Internal quotation marks omitted.) *State* v. *Tippetts-Abbett-McCarthy-Stratton*, supra, 204 Conn. 183.

[6] General Statutes § 13a-80d provides: "The use of any space on, over or below any state highway right-of-way leased by the Commissioner of Transportation to a lessee shall conform with zoning regulations and ordinances of the local government in which the land is located or as modified by a variance pursuant to legal process."